IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James Blakely #255623, | ) | C/A No.   5:11-cv-00871-MBS-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Dr. Byars, Jr., James Dean, Major, Ms. | ) | |
| Whitney, Cpl. Montgomery, Major Bush, | ) | |
| Warden McCall, D.N. Tatarsky, Warden | ) | |
| Padula, Attorney Eric Farrell, Cpl. Tisdale, | ) | |
| Officer Carter, Sgt. D. Cotton, J. Johnson, | ) | |
| DHO Patterson, Lt. Monroe, | ) | |
| | | |
| Defendants. | | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"),

filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights.

This matter is before the court on the Motion to Dismiss filed by Defendant Farrell on

October 6, 2011, ECF No. 69, Motion for Summary Judgment filed by Defendant Farrell on

March 26, 2012, ECF No. 141, and Motion for Summary Judgment filed by all remaining

Defendants on March 16, 2012, ECF No. 136.  As Plaintiff is proceeding pro se, the court

entered *Roseboro* orders[1] on October 11, 2011, and March 19 and 27, 2012 advising Plaintiff

of the importance of such motions and of the need for him to file an adequate response. ECF

Nos. 72, 137, 142.  Plaintiff responded to Defendant Farrell's Motion to Dismiss on January

17, 2012, ECF No. 112, and Defendant Farrell's Motion for Summary Judgment on April 30,

2012, ECF No. 149.  Defendant Farrell filed a reply on May 25, 2012. ECF No. 159. Plaintiff

responded to the remaining Defendants' Motion for Summary Judgment on April 23, 2102,

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d
309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment
procedures to pro se litigants).

ECF No. 148, and Defendants replied on May 18, 2012, ECF No. 157. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.[2] Because these motions are dispositive, a Report and Recommendation is entered for the court's review.[3]

I.      Background

Plaintiff, James G. Blakely, is an inmate housed at Perry Correctional Institution ("PCI"). ECF No. 36-1 at 2. Plaintiff filed his initial Complaint on April 14, 2011. ECF No. 1. He submitted an amended Complaint on August 31, 2011 adding Defendant Monroe, which the court permitted to be filed and served. ECF No. 36. Plaintiff's complaints allege a number of constitutional and other deprivations against Defendants, including conspiracy to obstruct justice, cruel and unusual punishment, retaliation, and violations of the First, Fifth, Eighth and Fourteenth Amendments. ECF No. 36-1 at 2. Specifically, Plaintiff contends that on July 7, 2010, he was falsely charged with threatening to inflict harm on Defendant Montgomery in retaliation for filing Case No. 4:10-CV-00718-RMG-TER against Defendants Dean and Padula. ECF No. 36-1 at 3. Plaintiff contends that Defendant Dean made several attempts to provoke Plaintiff and when that did not work, Defendant Dean had Defendant Montgomery instigate false charges against Plaintiff. *Id.* Plaintiff contends that he was in the educational building, on July 7, 2010, when Defendant Montgomery refused to allow him to return to the dorm so that he could use the bathroom. *Id.* Plaintiff then approached the librarian who he contends also attempted to persuade Defendant Montgomery to allow Plaintiff to use the bathroom, but Montgomery refused. *Id.* Plaintiff proceeded to

---

[2] On January 2, 2012, the matter was reassigned from United Magistrate Judge Thomas E. Rogers, III to the undersigned. ECF No. 100.

[3] Other pending motions are addressed within.

use the bathroom facilities located in the educational building without permission, and Plaintiff contends that Defendant Montgomery was instructed by her supervisor to write-up Plaintiff for disobeying a directive. *Id.* at 4. Plaintiff alleges that he returned to the dorm, and approximately fifteen minutes later, Defendants Dean and Johnson ordered Plaintiff to be locked in his cell for "threatening to inflict harm" on Defendant Montgomery. *Id.* Plaintiff alleges that Defendant Dean signed off on a blank disciplinary incident report on July 8, 2010 and that Defendant Montgomery was persuaded, or forced, to sign her signature on the disciplinary incident report on July 15, 2010. *Id.* Plaintiff contends that he was served with the charge on July 21, 2010 in violation of SCDC policy that service must be made in nine days or the charge is dropped. *Id.* at 4-5. Plaintiff argues that the disciplinary hearing officer ("DHO") who heard these claims ignored the affidavits Plaintiff submitted in support of his defense and failed to call Plaintiff's witnesses who were present during the incident. *Id.* at 5. Plaintiff was placed on cell restriction and after a hearing was found guilty of threatening to inflict harm and sanctioned with loss of phone, visitation, and canteen privileges. *See* ECF No. 136-30 at 1.

Plaintiff also alleges that on November 16, 2010, Defendant Farrell had Plaintiff's cell searched for alleged gang material so that Farrell could remove Plaintiff's legal material that Plaintiff was using to challenge Farrell's motion for summary judgment in Case No. 4:10-CV-00718-RMG-TER. ECF 36-1 at 5-6. Plaintiff contends that during the search of his cell the correction officers found Requests to Staff in Plaintiff's trashcan. *Id.* at 6. Plaintiff contends that Defendant Dean took the Requests to Staff and gave them to each individual SCDC official and Plaintiff was again charged with four counts of "threatening to inflict harm." *Id.* Plaintiff argues that the Requests to Staff were not threatening, but he

threw them away because he "realized that they could be misinterpreted" and Plaintiff did not want to give SCDC officials additional reasons to keep him in lock-up. *Id.* Plaintiff contends that he told the DHO during his December 7, 2010 hearing that the Requests to Staff were found in the trash and the DHO stated "it makes no different [sic] that they were thrown away  [you] wrote them therefore [you are] guilty." *Id*. at 6.   Plaintiff argues that he did not threaten Defendant Whitney and that the charges that Defendant Dean filed were self-created, and although the DHO had Plaintiff's original Request to Staff, she ignored what was actually written and found Plaintiff guilty.  ECF No. 36-1 at 17. Plaintiff avers that even if the Request was threatening, that he was sufficiently "locked down" and contained and there was no way he could carry out the threat.  *Id.* at 18-19.  Plaintiff was found guilty of three of the "threatening to inflict harm" charges and on each charge was sanctioned with disciplinary detention, and loss of phone, visitation and canteen privileges. ECF Nos. 136-32, 136-33, 136-34. Plaintiff argues that his punishment was excessive for writing something he threw away.  ECF No. 36-1 at 19.

In support of his denial-of-access-to-courts claim, Plaintiff avers that his ability to mail legal mail was improperly restricted, and that while he was in Chesterfield dorm and in the Special Management Unit ("SMU"), he was not allowed to go to the law library or to get copies as he needed them.  ECF No. 36-1 at 5-6.  Plaintiff also argues that when he was transferred to PCI on January 18, 2011, his legal box and legal material were taken, and only some of his material was returned, and that "all the evidence against SCDC's employees were missing," including Plaintiff's pleadings and legal research.  *Id.* at 7, 14.   Plaintiff contends that in February 2011 when he was shown his property by an SCDC officer, all his legal material was present. *Id.* at 14. Plaintiff argues that Defendant Farrell saw an

opportunity to get access to Plaintiff's property and sent a SCDC officer to "see if Plaintiff had his legal material" and then had the officer to prepare a false affidavit "claiming that Plaintiff told her that he had all his legal material." *Id.* at 13. Plaintiff contends that this was done to prevent the court from granting Plaintiff's request that he be allowed to personally retrieve his legal documents from his property, and so that Defendant Farrell could have the "opportunity to censor all Plaintiff's legal documents" and search for "evidence against the defendants in Case No. 4:10-CV-00718-RMG-TER." *Id.* at 12-13. Plaintiff also contends that he is being sold defective pens and is being limited improperly to 16 sheets of paper and one brown envelope every two weeks. *Id.* at 15.

Plaintiff also contends that his ink pens, some small Islamic books, family pictures, night lamp, two English dictionaries, and other personal property were improperly taken or destroyed after he was placed in SMU. *Id.* at 7-8, 11. Plaintiff argues that he was improperly kept in SMU although other inmates were released early because of good behavior. *Id.* at 8-9. Plaintiff argues that one of his "threatening to inflict harm" charges was overturned but that SCDC refused to grant Plaintiff another hearing. *Id.* at 10. Plaintiff contends that the length of the revocation period for his canteen and visitation privileges has been improperly calculated. *Id.* Plaintiff also complains that his grievances were being improperly processed and investigated, and that he appealed all his disciplinary convictions and he has not received a final answer, and SCDC had 105 days to finalize his grievances and this time period expired on March 22, 2011. *Id.* at 11, 19.

Plaintiff alleges that he is imprisoned due to an "error of law" that Defendants Tatarsky and Byars, Jr. should have corrected which caused Plaintiff to serve four years and ten months beyond his legal sentence. *Id.* at 23. Plaintiff also argues that he has "been in

lockup since July 2010" and he has not received any recreation, exercise, or fresh air. ECF No. 36-1 at 24. Plaintiff also contends that his SMU cell did not have any light switches to control the lights, nor did it have an outlet to plug in a lamp. *Id.* at 24-25. Plaintiff requests relief in the amount of $10,000.00 per Defendant. *Id.* at 27.

II.      Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In construing a motion to dismiss, the facts, though not the legal conclusions, alleged in a plaintiff's pro se complaint must be taken as true. *Loe v. Armistead*, 582 F.2d 1291, 1292 (4th Cir. 1978); *Iqbal*, 556 U.S. 662. A pro se complaint should survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim only when a plaintiff has set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level" and beyond the level that is merely conceivable. *Id.* at 555. A pro se complaint should be liberally construed. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). However, a court is not required "to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain,* 478 U.S. 265, 286 (1986), or a legal conclusion unsupported by factual allegations. *Iqbal*, 556 U.S. at 679. Dismissal is appropriate when a complaint contains a description of underlying facts that fails to state a viable claim. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Twombly*, 550 U.S. at 558.

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials,

without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III.     Analysis

     A.     Defendants Byars, Dean, Whitney, Montgomery, Bush, McCall, Tatarsky, Padula, Tisdale, Carter, Cotton, Johnson, Patterson, and Monroe's Motion for Summary Judgment

          1.     Failure to State a Cause of Action

               a.     Defendant Bush

Defendants contend that Plaintiff's allegations that Defendant Bush did not release Plaintiff from SMU after conferring with Defendant Dean, although other inmates were being released early for good behavior, is not enough to state a cause of action against Bush. ECF No. 136-35 at 2. Defendants contend that there is no duty to release an inmate from SMU for any particular behavior. *Id.* In response, Plaintiff argues that Defendant Bush was in charge of Plaintiff at PCI, and it was "Bush['s] call whether he wanted to let plaintiff out of lock up. But Major Bush wanted to make sure that Defendant Dean was satisfied with

Plaintiff's punishment before Plaintiff was treated fairly." ECF No. 148 at 11-12. Generally, there is no constitutional right for a state or federal prisoner to be housed in a particular institution or in a particular portion or unit of a correctional institution. *See Meachum v. Fano*, 427 U.S. 215, 223-24 (1976). In order to show a constitutional violation with respect to a custody classification, the conditions must exceed the sentence imposed or create an atypical or significant hardship in violation of a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). Here, Plaintiff has not alleged that Defendants' actions have imposed an atypical and significant hardship or that the conditions exceed the sentence imposed, and therefore he is not able to establish that he has a state-created liberty interest in his security classification. The undersigned recommends that summary judgment be granted and this claim be dismissed.

b.  Defendant McCall

Defendants contend that Plaintiff's allegation that Defendant McCall failed to order a rehearing on an unspecified charge is insufficient to state a cause of action against McCall. ECF No. 136-35 at 2. Defendants argue that the charges raised in Plaintiff's Complaint occurred at Lee Correctional Institution on July 7, 2010 and November, 2012, and Defendant McCall is the Warden at PCI. *Id.* Defendants aver that Plaintiff has not shown that he has a legal right to a new hearing. *Id.* Plaintiff contends, in response, that Defendant McCall is an employee of SCDC and because SCDC Headquarters ordered that Plaintiff have a new hearing, this hearing could take place at any SCDC institution because "SCDC is set up to communication or televise with any of its facilities." ECF No. 148 at 12-13. A review of the decision overturning Plaintiff's July 28, 2010 disciplinary conviction reveals that SCDC did not mandate that Plaintiff's case be reheard. ECF No. 36-1 at 33. Further, Defendants have

agreed to grant Plaintiff a rehearing on his July 28, 2010 charge if Plaintiff so desires. *See* ECF No. 157 at 2. Because Plaintiff has not shown that he has a legal right to a new hearing, the undersigned recommends that summary judgment be granted and this claim be dismissed.

c. Defendant Monroe

Defendants argue that Plaintiff has not alleged that Defendant Monroe ordered the destruction of his property or participated in the destruction of his property, but instead Plaintiff alleges that his property was destroyed with Defendant Monroe's consent. ECF No. 136-35 at 3. Citing to *Ashcroft v. Iqbal*, Defendants contend that Defendant Monroe may not be held liable under a theory of respondeat superior under 42 USC § 1983 and therefore Plaintiff's Complaint has failed to state a cause of action against Defendant Monroe. *Id.*; *see Iqbal*, 556 U.S. at 676 (noting "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Plaintiff contends that Defendant Monroe is the Supervisor of Contraband at PCI and that nothing can be destroyed or thrown away without Monroe's approval. ECF No. 148 at 16. Plaintiff argues that it is his belief that Monroe was an actual participant in the destruction of Plaintiff's property, but even if he was not, SCDC's policies make him responsible for Plaintiff's property. *Id.* at 16-17.

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted). To successfully pursue such a theory, Plaintiff would have to demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's

corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practices. *Id., see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Plaintiff's bald allegation that Defendant Monroe participated in or was responsible for the destruction of Plaintiff's property, without more, is insufficient to establish that Defendant Monroe tacitly authorized or was deliberately indifferent about the alleged destruction of Plaintiff's property. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). To the extent Plaintiff attempts to rely on the doctrine of supervisory liability, the undersigned recommends that summary judgment be granted as to this claim.

### d. Defendants Byars and Tatarsky

Defendants contend that Plaintiff has not made any specific allegations as to the activities of Defendants Byars and Tatarsky, but instead asserts that these Defendants failed to train the other Defendants and failed to protect Plaintiff's rights. ECF No. 136-35 at 3. Defendants argue these allegations are insufficient to state claims against Defendant Tatarsky, SCDC's general counsel, and Defendant Byars, SCDC director. *Id.* at 2-3. Plaintiff contends that Defendants Byars and Tatarsky created a policy or custom allowing and encouraging illegal acts and that these Defendants were grossly negligent in managing the employees they supervised. ECF No. 148 at 24. Plaintiff argues that he notified these Defendants of his "problems and injust [sic] treatment" and Defendants failed to correct the violation of Plaintiff's constitutional rights. *Id.* Plaintiff does not allege what rights these Defendants violated or that these Defendants had specific knowledge or tacitly authorized any specific improper or illegal acts undertaken by the persons they supervised. Instead

11

Plaintiff argues that because these individuals are "two of the policy makers" for SCDC, they are "liable for the unconstitutional policies that they make." ECF No. 148 at 24. Plaintiff has not cited a specific policy[4] created by these Defendants which is unconstitutional and asserts that "under SCDC's policy Plaintiff cannot have copies made of SCDC's policies." *Id.* at 25. The undersigned finds that Plaintiff has not alleged sufficient facts to state any claim actionable under § 1983 against Defendants Byars and Tatarsky. Therefore, the undersigned recommends that summary judgment be granted as to this claim for these Defendants.

2. Failure to Exhaust

Defendants contend that Plaintiff failed to exhaust his administrative remedies on the conditions-of-confinement issues of recreation and lighting in his cell as required by the Prison Litigation Reform Act ("PLRA"). ECF No. 136-35 at 3-4. The PLRA, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

---

[4] In a May 20, 2011 letter to Defendant Tatarsky, Plaintiff refers to an SCDC practice allowing an indigent inmate only 15 sheets of paper every two weeks. ECF No. 148-2 at 13-14. To the extent that this is the "policy" of which Plaintiff complains, the court addresses this allegation as part of Plaintiff's denial of access-to-courts claim. Plaintiff has not alleged that Defendants Tatarsky and Byars are the authors of this policy.

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under federal law, including § 1983. *Woodford*, 548 U.S. at 81.

Here, Defendants have produced evidence that Plaintiff has not exhausted his administrative remedies on the issues of recreation and lighting in his cell when Plaintiff was in lockup starting in July 2010. ECF Nos. 36-1 at 24-25; 61-3 at 2-4. Specifically, Defendants offer the Affidavit of Angela Hardin, Inmate Grievance Administrator with the SCDC Inmate Grievance Branch. ECF No. 136-9 at 1. Ms. Hardin attests that Plaintiff "has not filed any grievances since July 2010 regarding adequate recreation while on lockup" and has filed only one grievance regarding adequate lighting in his cell. ECF No. 136-9 at 2. This lighting grievance, filed on September 8, 2010, was returned to Plaintiff as unprocessed because Plaintiff filed more than one issue on his form. ECF No. 136-11. Ms. Hardin explained that Plaintiff was given adequate time to resubmit a new grievance on that issue, but failed to do so. ECF No. 136-9 at 2.

In his response to Defendants' Motion for Summary Judgment, Plaintiff contends that he filed grievances on the recreation and lighting in the Chesterfield Unit at Lee Correctional Institution. ECF No. 148 at 27. Plaintiff argues that it is not unusual for Defendants "to

hold back an inmate's grievance for months and sometimes years before they process those grievances." *Id.*   Plaintiff offers as an example a grievance concerning access to courts, which was purportedly filed on June 2004 and responded to on February 10, 2011, to show that a grievance was held back for seven years.   *Id.*   Plaintiff contends that "he can only ensure the Court that grievances were filed." *Id.*

Plaintiff's general allegations regarding the grievance process and other grievances he filed are insufficient to overcome the undisputed evidence that he has not exhausted his administrative remedies with regard to his recreation and lighting claims. *See Lujan*, 497 U.S. at 888.   The undersigned, therefore, recommends summary judgment be granted to Defendants on these claims.

### 3.   Failure to Process Grievances

Plaintiff contends that Defendants refused to process or investigate his grievances. ECF No. 36-1 at 19-20.   Defendants assert that Plaintiff's grievances were properly processed, but even if they were not, Plaintiff's allegations do not state a constitutional claim. ECF No. 136-35 at 7.   Defendants also argue that Plaintiff's contention that Defendants Padula and Johnson failed to properly investigate and process his grievances fails to state a cause of action against Padula and Johnson.   ECF No. 136-35 at 2.   Plaintiff contends that he has a constitutional right to a grievance, and that "[t]he [PLRA] specifically says that a prisoner must exhaust state's remedies and that is done through grievances procedures and processing of those grievances, which do fall under the Fourteenth Amendment Due Process."   ECF No. 148 at 15.

Inmates have no constitutionally protected right to a grievance procedure within the prison system under the First Amendment, the Due Process Clause, or any other statute. *See*

*Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) (finding "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.") Thus, there is no constitutional right to file a grievance, and there is no constitutional right to have a grievance timely determined within the prison system. Moreover, even though the PLRA requires prisoners to exhaust prison grievance procedures before filing suit, the PLRA requires that administrative remedies "as are available" must be exhausted. *See Jones*, 549 U.S. at 202; 42 U.S.C. § 1997e. Thus, the PLRA does not require prisons and jails to implement certain administrative exhaustion procedures nor does the PLRA require prison officials to process grievances. The PLRA merely requires prisoners to attempt to exhaust whatever available administrative remedies exist before filing civil rights lawsuits. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (discussing the meaning of "available" administrative remedies). Accordingly, the undersigned recommends that Plaintiff's claim related to his right to have his grievances investigated or processed should be dismissed.

### 4. Denial of Access to Courts

Plaintiff alleges that his access to courts was obstructed when Defendants created false charges against Plaintiff and placed him in administrative segregation. ECF No. 148 at 49. Plaintiff also argues that his right to access courts was violated when prison restrictions prevented Plaintiff from going to the law library or limited his ability to check out books, confer with inmate paralegals, or participate in legal training programs. *Id.* at 40. Plaintiff also contends that prison officials denied him access to courts when they confiscated and destroyed his legal materials, and when they limited the number of pens, paper, and

envelopes that he could order. *Id.* Plaintiff further argues that SCDC employees failed to mail his pleadings and other legal materials. *Id.* at 52.

Defendants contend that Plaintiff was not denied access to courts as he was provided more than adequate legal supplies, access to the law library, and functioning ink pens. *Id.* Defendants argue that they provided legal materials to Plaintiff in the same manner as such materials are provided to other inmates. *See* Tisdale Aff., ECF No. 136-23 at 1. Defendants also argue that in addition to legal materials, Plaintiff received the same "monthly supplies that are provided to all lockup and indigent inmates per SCDC policy." *Id.* Defendants further state that all Plaintiff's law book requests were filled in the same manner as for other inmates, based on availability of the requested law books and the frequency of requests. *Id.* at 2. Defendants assert that Plaintiff was never intentionally given defective pens, and admit that some felt-tip pens occasionally did not work, but those pens were exchanged for pens that worked. *Id.*

The right of access to the courts is the right to bring to court a grievance that the inmate wished to present and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 350-53 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353-55.

Here, Plaintiff has failed to furnish any facts or evidence sufficient to establish that he suffered harm in any court action he had pending or planned to file. The undersigned

therefore recommends that this claim be dismissed. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (finding dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury).

5. Conditions of Confinement

In support of his conditions-of-confinement claim[5] Plaintiff argues that Defendant Montgomery's refusal to allow him to use the bathroom in the educational building, when Plaintiff is a diabetic was an act of cruelty. ECF No. 148 at 56-57. Defendants offer the Affidavit of Venus Montgomery, Corporal with the SCDC assigned to Lee Correctional Institution, who attests that to the best of her recollection Plaintiff requested to use the restroom during count time when no inmate is permitted to leave his current location. ECF No. 136-16 at 1. Montgomery attests that "Plaintiff was aware of the restroom procedures for inmates in the library and should have known that he would not be authorized to use the restroom at the time of his request." *Id.* Defendants contend that Plaintiff has not shown a deprivation of a basic human need or that such deprivation was "sufficiently serious." ECF No. 136-35 at 11. Defendants also argue that they have shown that the conditions that Plaintiff complains of are reasonable under the circumstances and do not rise to the level of a constitutional violation. *Id.*

As a general matter, the Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976). Under this Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Even so, the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337,

---

[5] Plaintiff also complains about inadequate lighting in his cell and lack of adequate exercise while he was in lockup. As discussed *supra*, the undersigned found that Plaintiff failed to exhaust his administrative remedies with regard to those claims.

349 (1981); *see also Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim.")(citations omitted).

In order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991); *Shakka*, 71 F.3d at 166. To establish the subjective component of a conditions-of-confinement claim, a prisoner must show that prison officials acted with deliberate indifference-that is, the prisoner must show the officials acted with more than mere negligence but less then malice. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Farmer* 511 U.S. at 835-37 (1994). For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme deprivation of his rights. *See Williams v. Branker*, 462 Fed. Appx. 348, 353 (4th Cir. 2012).

Here, the condition-of-confinement of which Plaintiff complains, i.e., not being allowed to use the bathroom, does not rise to the level of an Eighth Amendment violation. Plaintiff has not shown either injury or a substantial risk of serious harm based upon the challenged condition. The undersigned, therefore, recommends granting summary judgment to Defendants on this claim.

6.   Due Process Violation

Defendants contend that Plaintiff's due process claim must fail because "[t]here is no regulation with mandatory language that requires a certain decision in a certain

circumstance." ECF No. 136-35 at 12. Defendants argue that "Plaintiff cannot show any interest in 'life, liberty or property' and cannot state a due process violation in this case." *Id.* Plaintiff argues that OP-22.14 creates a liberty interest by using mandatory language and requiring specific substantive predicates for lockdown, for example, an inmate may be confined in lockdown whenever an inmate represents a threat to the order of the facility. ECF No. 148 at 63. Plaintiff also argues that SCDC regulations mandate certain procedures that must be followed once an inmate has been placed in lockdown, such as, an inmate can only be held on pre-hearing detention for seven days. *Id.* Plaintiff contends that he was deprived of "a liberty interest [of remaining free from administrative confinement] when he was placed on [pre-hearing detention] for 21 days." *Id.* Plaintiff also argues "that his property was held up for 11 days because [D]efendants wanted the opportunity to thoroughly search [P]laintiff's property bag." *Id.* at 62.

To state a due process claim, an inmate must demonstrate that he was deprived of life, liberty, or property by government action. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)(internal citations omitted). In *Sandin v. Conner*, the Supreme Court refined the test for when a state has created a liberty interest, abrogating the method of parsing the language of particular regulations to discern whether a state had created a liberty interest:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and

> significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. 472, 483-84 (1995) (internal citations omitted). Thus, "challenged prison conditions cannot give rise to a due process violation unless those conditions constitute 'atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life.'" *McKune v. Lile*, 536 U.S. 24, 37 (2002) (quoting *Sandin*, 515 U.S. at 484).

Here, Plaintiff has failed to demonstrate that any of the Defendants' challenged actions imposed an atypical and significant hardship. As an initial matter, Plaintiff's placement in pre-hearing detention for 21 days does not implicate due process. *See Sandin*, 515 U.S. at 486 (holding that discipline in segregated confinement does not implicate constitutional liberty interests); *Jackson v. Smith*, 91 F.3d 130 (Table), 1996 WL 380254, at *1 (4th Cir. 1996) (affirming district court's judgment as a matter of law that confinement in isolation did not implicate a due-process protected liberty interest). Further, although Plaintiff alleged that his access to the law library and books were limited, Plaintiff's own evidence demonstrates that he was able to check out three law books per week. *See* Plaintiff Aff., ECF No. 148-1 at 54. As discussed above, Plaintiff has failed to demonstrate that the alleged deprivation of access-to-courts resulted in an actual injury. Also, the 11-day deprivation of Plaintiff's property did not violate due process because Plaintiff has an adequate post-deprivation remedy to address his loss. *See* discussion *infra*. Moreover, because Defendants have agreed to rehear Plaintiff's disciplinary actions numbers 17 and 18 (heard on December 7, 2010) and to rehear disciplinary action number 15 (heard on July 28, 2010) if Plaintiff so desires, Plaintiff's allegations concerning his lack of due process regarding these hearings is now moot. ECF No. 157. Therefore, the undersigned finds that Plaintiff has failed to establish that any alleged deprivation was an atypical and significant

hardship, and the undersigned recommends Defendants be granted summary judgment as to this claim.

7.    Deprivation of Personal Property

Plaintiff argues that he has a Fourteenth Amendment due process right to his personal property as SCDC's policy OP-22.03 has given Plaintiff a liberty interest in maintaining his personal property.  ECF No. 148 at 65.  Plaintiff argues that he had a legal box and additional legal material that was in his locker.  *Id.*  Plaintiff contends that he was not present when his property was inventoried and that his signature on the inventory sheet was forged.  *Id.* at 66. Plaintiff argues that his legal box, pictures, photo albums, and other personal property were wrongfully confiscated or destroyed.  *Id.*  Plaintiff argues that his legal material and personal property was in "the hands of SCDC's officials, therefore, plaintiff must be compensated." *Id*. at 67.

Defendants contend that Plaintiff's property was inventoried prior to his placement in lock up in November 2010 and that Plaintiff had a box of legal material plus additional legal material stored in Property Control.  *See* Padula Aff., ECF No. 136-13 at 1.  During this inventory, some of Plaintiff's personal property was confiscated as contraband.  *Id.* Defendants contend that they are not aware of any of Plaintiff's property that was intentionally mishandled, improperly confiscated, lost or destroyed while Plaintiff was at Lee Correctional Institution.  *Id.*  Defendants argue that Plaintiff was transferred to PCI on January 2011, and at that time Plaintiff's property was inventoried and the inventory sheet does not reflect any legal materials were confiscated from Plaintiff.  *See* Cotter Aff., ECF No. 136-2 at 1.  Defendants contend that all property inventories were conducted pursuant to SCDC policy and procedure and that during this January 2011 inventory Plaintiff had

contraband that was confiscated. *Id.* Defendants argue that according to lockup records, Plaintiff was permitted to retrieve his legal work on February 1, 2011 and March 21, 2011. ECF No. 136-4.

A prisoner's claim for deprivation of personal property is not cognizable under § 1983. *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (holding that a prisoner was "deprived" of his property within the meaning of the due process clause of the Fourteenth Amendment but that the state's tort remedy provided all the process that was due); *see also, Mora v. City of Gaithersburg*, 519 F.3d 216, 230-32 (4th Cir. 2008)(finding that deprivations of personal property by corrections officials are not constitutional violations where there are procedures available for the inmate to recover that property or to be financially compensated for the loss). Here, Plaintiff can institute a civil action in the state courts to recover his personal property under state law. *See*, e.g., S.C. Code § 15-69-10 *et seq*. Therefore, the undersigned recommends that this claim be dismissed.

8. Qualified Immunity

Defendants assert that they are entitled to qualified immunity. ECF No. 136-35 at 14. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants'

conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that, as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

B.      Defendant Farrell's Motion for Summary Judgment[6]

Defendant Farrell moves for summary judgment arguing: 1) Plaintiff's Complaint fails to state a cause of action against Defendant Farrell because Plaintiff cannot show that

---

[6] Defendant Farrell's Motion to Dismiss, filed on October 7, 2011, offers arguments almost identical to the arguments in her Motion for Summary Judgment. ECF Nos. 69, 141. Inasmuch as the Motion to Dismiss is subsumed by the Motion for Summary Judgment, these motions will be considered together under the discussion of Defendant Farrell's Motion for Summary Judgment. Accordingly, Farrell's Motion to Dismiss, ECF No. 69, should be considered moot.

Defendant Farrell violated a right secured by the Constitution or the laws of the United States or that Defendant Farrell was acting under color of state law, 2) Plaintiff has not exhausted his administrative remedies, and 3) Plaintiff is barred from pursuing any of his claims under the PLRA's three strikes rule. ECF No. 141-1.

In addressing Defendant Farrell's argument that she was not acting under color of state law, Plaintiff argues "although not acting under the color of state law; [Defendant Farrell] did in fact cause Plaintiff to be subjected to the deprivation of his legal material which was secured by the First, Fifth, and Fourteenth Amendments." ECF No. 149 at 14. Plaintiff also contends that 42 U.S.C. § 1983 "does not say state officials, correctional officers, nor state's remedies" and Defendant Farrell is one of "every person" referenced in 42 U.S.C. § 1983 and therefore comes under that provision. *Id.*

An attorney, whether retained, court-appointed, or a public defender, generally does not act under color of state law when performing traditional functions as counsel. *See Polk County v. Dodson*, 454 U.S. 312, 317-325 (1981). However, an otherwise private person acts "under color of" state law when engaged in a conspiracy with state officials to deprive another of federal rights. *Tower v. Glover*, 467 U.S. 914, 920 (1984). Plaintiff alleges that Defendant Farrell and SCDC officials conspired to make sure Plaintiff did not receive his legal box or legal materials. ECF No. 149 at 1-2. In support of his conspiracy claims, Plaintiff offers his own affidavit where he attests that he believes "[D]efendant Farrell contacted [SCDC officials] and requested [P]laintiff's legal box and any legal material that they could come up with. Because only [D]efendant Farrell would have knowledge as to what [P]laintiff had filed in Court." ECF No. 149-1 at 3. However, Plaintiff's mere speculation that Defendant Farrell acted with other SCDC officials to confiscate Plaintiff's

legal materials is not sufficient evidence to support his conspiracy claim. *See Bishop v. Richardson*, 852 F.2d 565, *1 (Table) (4th Cir.1988) (finding the "naked assertion of a conspiracy . . . without supporting operative facts establishing an agreement between the defense attorney and the prosecutor or some other state actor, and a common plan to put the agreement into effect, is insufficient to implicate § 1983.") (internal quotations and citation omitted). The undersigned, therefore, recommends that Defendant's Farrell's Motion for Summary Judgment be granted.

      C.      Plaintiff's Motion for Judgment against Defendant Montgomery

Plaintiff moves for an entry of judgment against Defendant Montgomery who Plaintiff claims falsely charged Plaintiff and caused Plaintiff to suffer physical and mental abuse. ECF No. 163. Plaintiff contends that SCDC investigated, and dismissed, Defendant Montgomery's charges against Plaintiff which proves that Plaintiff was wrongfully charged and convicted. *Id.* In response to Plaintiff's motion, Defendants (with the exception of Defendant Farrell) argue that they submitted the Affidavit of Defendant Montgomery, along with her Incident Report, and these documents refute Plaintiff's arguments and support summary judgment on behalf of the Defendants. ECF No. 164. Defendant Montgomery attests that Plaintiff threatened her in the library and "that the incident report is true and correct and was written on [her] own initiative, not at the direction of anyone else." ECF No. 136-16. Defendant Montgomery's Incident Report states that she told Plaintiff he could not use the bathroom in the library building and Plaintiff stepped toward her "in a threatening manner and raised his cane." ECF No. 136-17. Although Plaintiff is correct that Defendant Montgomery's charges against him were dismissed, SCDC did not find that Plaintiff was wrongfully charged. ECF No. 148-1 at 9. Instead, SCDC found that Plaintiff was not

provided a counsel substitute as he requested, and therefore, his conviction was overturned. *Id.* SCDC further found that due to the seriousness of the charge that "approval is granted for a rehearing." *Id.* Because Plaintiff was not acquitted on the merits of the charges and Defendants have offered a rehearing on this charge if Plaintiff so wishes, the undersigned recommends that Plaintiff's Motion for Judgment against Defendant Montgomery be denied.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motions for Summary Judgment, ECF Nos. 136, 141, be **granted,** that Plaintiff's Motion for Judgment against Defendant Montgomery, ECF No. 163, be **denied**, and that this case be dismissed. If the court accepts this recommendation, Defendant Farrell's Motion to Dismiss, ECF No. 69, Plaintiff's pending Motion to Produce, ECF No. 126, and Plaintiff's Motion for Evidentiary Hearing, ECF No. 133, will be moot.

IT IS SO RECOMMENDED.

August 7, 2012                                          Kaymani D. West
Florence, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**